**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **Y.D.R.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 5:22-cv-439 (CHW)** |
| | : | |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY,** | : | **Social Security Appeal** |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff

Y.D.R.'s application for benefits under Title II of the Social Security Act. The parties consented

to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any

appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the

same manner as an appeal from any other judgment of the United States District Court. The

Commissioner's decision is based on the application of proper legal standards and is supported by

substantial evidence. Accordingly, it is **ORDERED** that the Commissioner's decision be

**AFFIRMED**.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits on October 31, 2019, alleging

a disability onset date of July 17, 2019. R. 336-39. Plaintiff's application was denied initially and

upon reconsideration. R. 189, 207. After a hearing before an Administrative Law Judge ("ALJ"),

the ALJ issued a decision that found Plaintiff was not disabled. R. 165-83. On December 13,

2021, the Appeals Council remanded Plaintiff's case to the ALJ for the consideration of additional evidence and issues. R. 184. A second hearing was held, and the ALJ again issued an unfavorable decision finding that Plaintiff was not disabled. R. 14-48. Plaintiff's request for review of the second unfavorable decision was denied by the Appeals Council. R. 1-5. On December 13, 2022, Plaintiff filed the present case, seeking judicial review of the ALJ's decision. (Doc. 1). Plaintiff filed her brief in support of her complaint on May 16, 2023, and the Commissioner filed a response brief on July 18, 2023. (Docs. 12; 16). No reply brief was filed.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

This record focuses primarily on Plaintiff's medical history for degenerative disc disease, osteoarthritis, and related disorders, and the medical source statement generated by Dr. Appavuchetty Soundappan, Plaintiff's primary care physician, as this piece of evidence is central to Plaintiff's present claims.

Plaintiff visited Dr. Soundappan for treatment related to arthritis, swelling in her right knee, as well as aching and pain in that knee, on January 15, 2019. R. 562[1]. Plaintiff reported her pain level as a six or seven out of ten. *Id.* Dr. Soundappan prescribed Meloxicam and vitamins and instructed Plaintiff to walk daily. R. 563-64. Dr. Soundappan also filled out paperwork for Plaintiff to receive a handicap permit for her car, which she later received. R. 474, 563.

Plaintiff began treatment with Dr. William Wiley at Middle Georgia Orthopedic Surgery and Sports Medicine on May 17, 2019. R. 530. Both of Plaintiff's knees were causing her serious pain, and she rated that pain a nine out of ten. R. 530. Plaintiff walked with an abnormal gait,

---

[1] The record in this case is found at Document 9 on the Court's docket. It appears that records related to another claimant were inadvertently filed as Document 8.

specifically a limp.  R. 531.  Plaintiff was prescribed additional medications of Tylenol, Mobic, Flexeril, Neurontin, and Voltaren 1% gel, as well as an L-medial off-loader knee brace.  R. 532. X-ray images were taken of Plaintiff's knees. Plaintiff's right knee showed no abnormalities while her left knee showed mild arthritis with slight loss of joint space.  *Id.*  On August 14, 2019, Plaintiff underwent corrective surgery in the form of a right knee replacement.  R. 987.  Plaintiff attended physical therapy from the time of her surgery to August 29, 2019, at which time Plaintiff reported that her pain had improved to a five out of ten in her right knee.  R. 519.  On October 17, 2019, Plaintiff reported that her right knee pain was still a five out of ten.  R. 513.  Although Plaintiff also reported that physical therapy was helping her knee, she complained that her knee was "popping."  *Id.*  On October 30, 2019, Plaintiff returned to Middle Georgia Orthopedic and reported that her pain had improved and was down to a four out of ten, but activity worsened her pain.  R. 510.  Dr. Wiley recommended stretching and exercise to manage these symptoms.  R. 512.

At an appointment with Dr. Wiley on November 27, 2019, Plaintiff reported that her right knee pain was a five out of ten and that activity continued to increase her pain, although physical therapy and medication helped.  R. 506.  Dr. Wiley opined that Plaintiff should not continue to work because her pain was made worse by time spent working on concrete floors.  R. 866.  In February 2020, Plaintiff had her knee manipulated under anesthesia to manage her condition.  R. 576-77.  Plaintiff's pain gradually improved after this procedure, but Plaintiff was still unable to maintain activity without increasing her knee pain.  R. 571.

At a physical therapy session on August 19, 2020, Plaintiff reported shoulder pain.  R. 842. Plaintiff had suffered a rotator cuff tear the previous month.  *Id.*  Plaintiff's shoulder pain improved with physical therapy but was made worse by physical activity.  R. 831.  Plaintiff reported that her

shoulder pain increased over time, and by October 2020, Plaintiff reported that her pain had increased significantly to a five out of ten on the pain scale. R. 823. On October 19, 2020, Plaintiff reported that her shoulder pain had increased to a seven out of ten in response to activity, and her shoulder mobility had decreased to 70 degrees of flexation and 46 degrees of abduction, with the standard for both measurements being 180 degrees. R. 821-22. Plaintiff continued to report pain in her right knee and shoulder in December 2021. R. 987. Imaging of Plaintiff's shoulders and knees on December 28, 2021, revealed degenerative changes in the left knee and both shoulders. *Id.* The imaging also showed no suspicious abnormal focal radiotracer accumulation in the whole-body bone scan and no evidence for bony metastasis. *Id.*

Plaintiff's symptoms had worsened by January 17, 2022, when Plaintiff returned to Dr. Wiley. R. 954. Plaintiff continued to report that her pain improved with rest but worsened with activity. *Id.* Plaintiff was examined by Dr. Donald Rosenbaum, an orthopedist, on January 26, 2022. R. 877. Dr. Rosenbaum opined that Plaintiff was only able to lift 10 pounds occasionally, and only with her right hand due to weakness. *Id.* Further, Dr. Rosenbaum found that Plaintiff required work restrictions because of limited range of motion in her right knee, her need for an assistive walking device, and weakness in her upper extremities. *Id.* On April 20, 2022, Plaintiff again visited Dr. Wiley, who found that Plaintiff required a total knee replacement in her left knee. R. 1119. Plaintiff had moderate to severe pain on the left side of her body, which worsened with activity, and Dr. Wiley found that Plaintiff required a cane to walk. *Id.*

*Hearing Testimony*

At her hearing before the ALJ, Plaintiff testified about her current conditions and their treatments. Specifically, she testified that she was being treated by Dr. Wiley for a pinched nerve in her back, which was being assessed by an MRI to be followed by treatment with cortisone shots.

R. 63-64.  Plaintiff reported that she spent most of her day lying down and resting, and she was unable to get up and perform house or yard work.  R. 64.  Plaintiff testified that she left her house occasionally for doctor appointments, sometimes driving herself but usually allowing someone else to take her.  R. 64-65.  Plaintiff sometimes used a wheelchair when she went to have "special x-rays" taken, but she also would take her own walker and cane.  R. 65.  Plaintiff went to church every first and third Sunday of the month but otherwise did not engage in social activities.  R. 80. Plaintiff testified that she could walk about half the length of a football field with one of her assistive walking devices but could not go further because she would begin to experience shortness of breath and swelling.  *Id.*

Plaintiff reported that she had completed high school, and she had worked at Anchor Glass before filing for disability.  R. 66.  Since her alleged onset date of July 17, 2019, Plaintiff had not engaged in any work for pay.  *Id.*  Plaintiff lived with her mother and son, and her mother helped her with basic household chores.  R. 67.  Plaintiff testified that she was unable to do any sweeping, vacuuming, mopping, laundry, dishes, or cooking.  *Id.*  Plaintiff did not go grocery shopping by herself and could only go with her children or her nieces because they would pick up the items she needed at the store.  *Id.*  Plaintiff reported using her cane and walker every day, using the cane "all the time" and the walker to help guide her when she went out.  R. 68.  Plaintiff had problems with balance, specifically falling, staggering, and stumbling without her assistive devices.  *Id.*  Plaintiff attributed these difficulties with balance and walking to swelling and shortness of breath.  *Id.*

Plaintiff reported that she had undergone three knee surgeries, with two on her right knee. *Id.*  Plaintiff still experienced swelling "all day" in that knee following her surgeries.  *Id.*  Plaintiff had been instructed to elevate her leg, ice it, and apply a cream to it to manage these symptoms. R. 69.  Plaintiff testified that she elevated her leg six to seven times a day for fifteen to thirty

minutes per elevation, at the instruction of Dr. Wiley and Dr. Soundappan. *Id.* Plaintiff could stand for five to ten minutes and sit for about fifteen minutes, and she spent "pretty much all day" lying down. R. 70. Both of Plaintiff's knees had osteoarthritis, and Plaintiff dragged her right leg as she walked if she did not have her assistive walking device with her. R. 71.

Plaintiff testified that she had surgery on her right shoulder to repair her rotator cuff, but her shoulder continued to bother her. R. 71-72. Plaintiff was unable to reach above shoulder level with her right arm and could not lift her left arm without her fingers becoming numb at the time of the hearing. R. 72. Plaintiff also had right thumb "trigger finger," which caused her thumb to lock up and be unable to grip. *Id.* Plaintiff had surgery for her "trigger finger" and also received physical therapy, but her finger continued to bother her. R. 72-73. Plaintiff experienced general weakness in her hands that caused her to drop things, and she testified that she could only pick up, lift, and carry about five pounds. R. 73. Plaintiff described her previous work experience at Anchor Glass doing production work, in which she was required to lift, carry, and handle over forty pounds at a time.

Plaintiff was taking hydrocodone and oxycodone for pain, omeprazole for stomach problems and acid reflux, Naprosyn for leg pain, bisoprolol for her blood pressure, Synthroid for her thyroid, and applying ice packs and using alcohol rubs to manage her symptoms at the time of the hearing. R. 79-80. None of the medications caused side effects that Plaintiff was aware of. R. 80. Plaintiff testified that she was never without pain, despite the treatment she received. *Id.*

Plaintiff testified that she required help to get dressed, specifically putting her shoes, socks, and shirt on, and she also needed help taking care of her hair. R. 81. Plaintiff experienced depression that she attributed to her pain and not being able to do the things that she wanted to do because of her pain. *Id.*

*Medical Source Statement*

On June 28, 2022, Dr. Appavuchetty Soundappan issued a Medical Source Statement of Ability to Do Work-Related Activities.  R. 8-13.  In this medical source statement, Dr. Soundappan indicated that Plaintiff could never lift or carry anything "up to ten pounds," and the conditions and medical findings that supported this assessment were neck pain, bilateral carpal tunnel syndrome, back pain, shoulder pain, and heel spurs.  R. 8.  Plaintiff could sit for fifteen minutes at a time, stand for ten minutes at a time, and walk for five minutes at a time.  R. 8-9.  Plaintiff could sit for an hour, stand for an hour, and walk for thirty minutes total in an eight-hour work day.  R. 9.  Dr. Soundappan opined that the rest of the eight-hour work day would need to be spent lying down and changing positions.  *Id.*  Plaintiff requires the use of a cane to ambulate, and the cane is medically necessary.  *Id.*  Plaintiff could not use her free hand to carry anything while using the cane, and Plaintiff could only ambulate for 20-30 feet without her cane.  *Id.*  The conditions and medical findings that supported these assessments were severe bilateral carpal tunnel syndrome, numbness, tingling, and weakness.  *Id.*

Plaintiff could never reach overhead, occasionally reach generally, never handle, never finger, never feel, never push, and never pull with her right hand.  R. 10.  She could occasionally reach overhead, occasionally reach generally, never handle, never finger, never feel, occasionally push, and occasionally pull with her left hand.  *Id.*  The conditions and medical findings that supported these assessments were weakness, numbness, an orthopedic evaluation, and bilateral hand surgery for carpal tunnel syndrome.  *Id.*  Plaintiff could occasionally operate foot controls with both her left and right foot, and the conditions underlying those assessments were back and knee pains.  *Id.*

Plaintiff could never climb stairs, ramps, ladders, or scaffolds.  R. 11.  Plaintiff could also never balance, stoop, kneel, crouch, or crawl.  *Id.*  The conditions and medical findings supporting these assessments were knee pain that required surgery in Plaintiff's left knee, her lumbar spine, and carpal tunnel syndrome.  *Id.*  Plaintiff could never tolerate unprotected heights, moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme court, extreme heat, or vibrations.  R. 12.  Plaintiff could occasionally tolerate operating a motor vehicle, and she required quiet noise conditions.  *Id.*  No particular medical or clinical findings were identified to support these assessments.

Plaintiff could occasionally, with help, perform activities like shopping.  R. 13.  She could not travel without a companion for assistance, walk a block at a reasonable pace on uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, or sort, handle, or use paper/files.  *Id.*  Plaintiff could ambulate without using an assistive device, prepare a simple meal and feed herself, and care for her personal hygiene.  The conditions and medical findings supporting these assessments were recurrent and persistent weakness and numbness.  Dr. Soundappan indicated that the limitations identified in his medical source statement were first present on July 1, 2019, and that they have lasted for at least twelve consecutive months.

## DISABILITY DETERMINATION

Following the five-step evaluation process, the reviewing ALJ made the following findings.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, July 17, 2019.  R. 20.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis and related disorderes including bursitis and right rotator cuff tear, carpal tunnel and tarsal tunnel syndrome, obesity, and

hypertension.  R. 20-22.  At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 22-23.  Before evaluating Plaintiff at step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the following additional limitations: she could life and carry up to 20 pounds occasionally and 10 pounds frequently; she could stand and/or walk four hours in an 8-hour workday with the usual and customary breaks; she could sit for six hours in an 8-hour workday; she could have no exposure to extreme/concentrated wetness; she could occasionally climb ramps and stairs, balance, and stoop; she could not climb ladders, ropes, or scaffolds, or have similar hazard exposure such as unprotected heights; she could use a cane for ambulating; could frequently use the upper and lower extremities for such things as pushing, pulling, or operating controls, including handling and fingering required to operate controls; she could not do overhead reaching; and she could not kneel, crouch, or crawl.  R. 23-27.  At step four, with the benefit of testimony from a vocational expert, the ALJ found that Plaintiff could not perform her past relevant work.  R. 37.  At step five, again with the benefit of vocational expert testimony, the ALJ found that there were additional jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as toll collector, office helper, and mail clerk.  R. 38.  The ALJ further found that if Plaintiff were reduced to sedentary work, she could perform the occupation of surveillance system monitor.  R. 38. Accordingly, the ALJ found that Plaintiff was not disabled.  R. 40.

## ANALYSIS

Plaintiff argues that remand is appropriate because the Commissioner failed to develop a full and fair record, specifically contending that the ALJ failed to consider a statement from Dr.

Appavuchetty Soundappan that Plaintiff disclosed in a letter to the ALJ on March 22, 2022.  (Doc. 12 at 8). [2]  However, the medical source statement from Dr. Soundappan which Plaintiff references was issued on June 28, 2022, which was months after the hearing before the ALJ on April 11, 2022, and also after the ALJ's decision was issued on May 31, 2022.  R. 8-13, 14, 98.  Because the ALJ could not consider a statement which had not been issued, and because substantial evidence supports the ALJ's decision, Plaintiff has not shown a basis for remand.

1. *Plaintiff has not shown a basis for remand because of unconsidered evidence and has not shown that the ALJ did not properly develop the record*

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record[,] . . . even if the claimant is represented by counsel." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981); *see also Graham v. Apfel*, 128 F.3d 1420, 1422 (11th Cir. 1997).  "However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded." *Graham*, 128 F.3d at 1423.  When determining if there is a showing of prejudice, "the court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.*

---

[2] Plaintiff also states that remand is appropriate because "the Commissioner improperly arbitrarily, and capriciously relied upon a vocational expert at step five whose testimony was not properly based upon the authorities which it cited" and because the "Commissioner also failed to review the Dictionary of Occupational Titles to 'check the work' of the vocational expert."  (Doc. 12 at 7-8).  However, Plaintiff failed to elaborate on these claims in her argument section or cite to authority to support them.  Under Eleventh Circuit precedent, these claims may be considered waived.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived").  Even if these claims were not waived, without further elaboration on the substance of these claims or supporting authority, Plaintiff has failed to show any basis for remand or to undermine the substantial evidence supporting the ALJ's decision.

Plaintiff contends that the requisite "prejudice can flow directly from the Commissioner's allowance of 'evidentiary gaps . . . which result in unfairness.'" *Brown v.* Shalala, 44 F.3d 931, 935 (11th Cir. 1995). Plaintiff argues that "a showing of [such a] deficiency . . . has been deemed several times to be enough for reversal absent some other showing" of prejudice. (Doc. 12 at 9 (*citing Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981); *Thorne v. Caliufano*, 607 F.2d 218, 220 (11th Cir. 1979)). Plaintiff contends that the Commissioner failed to consider a critical medical source statement and that this failure constitutes an evidentiary gap sufficient to warrant remand because the statement contains "key information from a physician" which could have created "a reasonable probability . . . of a finding of disability." (Doc. 12 at 9). Plaintiff identifies no other prejudice.

The medical source statement that Plaintiff identifies could not have been considered by the ALJ, however, because it was not created at the time of the hearing or the ALJ's decision. Although Plaintiff is correct that she informed the ALJ about a medical source statement on March 22, 2022, the medical source statement that Plaintiff cites was not issued until June 28, 2022. (Doc. 12 at 8); R. 8-13. Because the hearing before the ALJ took place on April 11, 2022, and the ALJ issued the decision against Plaintiff on May 31, 2022, the ALJ could not have considered the medical source statement, as it had not yet been issued. R. 14, 98. The medical source statement was properly considered by the Appeals Council, but it was found not to provide a basis for changing the decision of the ALJ. R. 1-2. Plaintiff does not challenge the Appeals Council's decision regarding the medical source statement, and accordingly, the Court may not consider the medical source statement when evaluating the ALJ's decision. *See Wilson v. Comm'r of Soc. Sec.*, 647 F.App'x. 951, 952 (11th Cir. 2016) ("If the applicant attacks only the ALJ's decision, we may not consider evidence that was presented to the Appeals Council but not to the ALJ); *see also*

*Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) ("when the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence"). Accordingly, Plaintiff's argument regarding the ALJ's failure to consider the medical source statement is meritless, and Plaintiff has not shown that the ALJ failed to develop the record as required.

   2. *The ALJ's decision is supported by substantial evidence*

   The ALJ followed the sequential evaluation process thoroughly, explaining his decisions at each step of the process and utilizing the testimony of a vocational expert. In addition to Plaintiff's severe impairment, the ALJ noted the following non-severe impairments: abdominal pain from gastroesophageal reflux disease, anemia, an asymptomatic thyroid disorder, hypocalcemia, hypomagnesemia, hypokalemia, and a vitamin D deficiency. R. 20-21. Each of these impairments was found to lack evidentiary support showing that they had more than a minimal affect on Plaintiff's ability to carry out basic work activities for a continuous period of twelve months or more. R. 21. Similarly, Plaintiff's mild depression was found not to cause more than a minimal limitation in Plaintiff's ability to perform basic work activities. *Id.* Plaintiff had previously denied being depressed, which the ALJ noted, but the ALJ also evaluated Plaintiff's mild depression through the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments. *Id.*; 20 CFR, Part 404, Subpart P, Appendix 1.

   The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 after considering Plaintiff's impairments and determining that there was no evidence showing that Plaintiff could not perform fine and gross movements with at least one

upper extremity.  R. 22.  The ALJ noted that Plaintiff used a single point cane, which leaves one upper extremity free, and that Plaintiff's physical therapy records showed improvement in her carpal tunnel syndrome after surgery with only a slight reduction in strength.  *Id.*  Accordingly, the ALJ found that Plaintiff did not meet or equal the 1.15, 1.16, 1.17, or 1.18 listings.  *Id.* Although there were no specific listing criteria in Appendix 1 for hypertension, the ALJ went on to consider Plaintiff's hypertension with reference to other body systems as required by listing 4.00H1.  *Id.*  The ALJ found no evidence of the required levels of cardiac enlargement, congestive heart failure, vision impairment, kidney impairment, or neurological impairment to meet or equal a listing.  *Id.*  Similarly, the ALJ found that the evidence regarding Plaintiff's carpal tunnel syndrome failed to establish disorganization of motor function in two extremities that resulted in an extreme limitation that would prevent Plaintiff from standing from a seated position, balancing while standing or walking, or using her upper extremities.  R. 22-23.  The ALJ also considered Plaintiff's obesity when determining the second through the fifth steps of the disability evaluation process, although no relevant medical source had specifically attributed additional limitations to Plaintiff's obesity as to meet a listing.  R. 23.

In finding that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with certain exceptions, the ALJ considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other relevant evidence according to the requirements of 20 CFR 404.1520(c).  *Id.*  In addition to the medical evidence, the ALJ relied upon Plaintiff's allegations, Plaintiff's hearing testimony, and a third party report from Plaintiff's sister when making his findings.  R. 24.  The ALJ determined that Plaintiff's medically determinable impairments could reasonable be expected to cause her alleged symptoms but that Plaintiff's allegations about the intensity, persistence, and

limiting effects of the symptoms were inconsistent with evidence in the record.  *Id.*  Nevertheless, the ALJ reduced Plaintiff's RFC in accordance with Plaintiff's impairments and the record.  R. 36.

According to Plaintiff's age, education, and work experience, along with her RFC, the ALJ found that Plaintiff could perform work existing in significant numbers in the national economy, such as toll collector, office helper, and mail clerk.  R. 38.  Further, the ALJ found that if Plaintiff were reduced to sedentary work with the additional limitations described in her RFC, she would still be able to perform work existing in significant numbers in the national economy, such as that of a surveillance system monitor.  *Id.*  In making these assessments, the ALJ properly considered the record, including objective medical findings, medical opinions, Plaintiff's medical history, her subjective complaints, and daily activities.  (R. 25-39); *see also* 20 C.F.R. §§ 416.912, 416.920(c), 416.945(a)(3), 416.946(c).  Therefore, substantial evidence supports the ALJ's findings.

## CONCLUSION

Plaintiff's arguments, which fail to show that the ALJ made a reversible error or that the ALJ's findings are not supported by substantial evidence, are meritless.  Accordingly, the Commissioner's decision is **AFFIRMED**.

**SO RECOMMENDED**, this 8th day of March, 2024.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge